IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAQUEL DE JESUS<br>    Plaintiff<br>v.<br><br>LEHIGH VALLEY HOSPITAL, INC.<br>    Defendant | :    CIVIL ACTION<br>:<br>:<br>:<br>:    NO. 24-5118<br>:<br>: |

## OPINION

### I. Introduction

Before this Court is a partial Motion to Dismiss (the "Motion" supported by the "Brief") filed by Defendant Lehigh Valley Hospital Inc. ("Defendant"). Defendant seeks to dismiss Count I of the Complaint of Plaintiff Raquel De Jesus (the "Complaint" of "Plaintiff"). Count I alleges that Defendant discriminated against Plaintiff under 42 U.S.C. § 1981 ("§ 1981") under three theories: "race, ancestry, and ethnic discrimination," "hostile work environment," and "retaliation." Because Plaintiff does not plead sufficient facts which permit this Court to infer intentionally discriminatory circumstances, this Court must dismiss Count I.

### II. Factual Background

Plaintiff alleges that she, a woman born in Puerto Rico and of "Hispanic/Latino ethnicity/ancestry," was employed for approximately 6.5 years by Defendant. (Dkt #1 at ¶¶ 12, 15). Plaintiff alleges that she performed her job well and without issue until the appointment of two Caucasian/American supervisors: Alycia Tomaino and Tonya Bullock. (*Id.* at ¶¶ 13-14). She further alleges that she was the only Puerto Rican and/or Hispanic/Latina on the night shift in Registration. (*Id.* at ¶ 17).

Plaintiff alleges that Ms. Tomaino gossiped about Plaintiff with Plaintiff's other Caucasian co-workers. (*Id.* at ¶ 18). Plaintiff also alleges that she received a written warning with

1

"inaccuracies, manufactured issues, and outright falsehoods." (*Id.* at ¶ 19). Specifically, that written warning included the following statements which Plaintiff pleads were inaccurate, manufactured, and/or false:

- that Plaintiff was said to be subject of a patient complaint, but it was eventually determined that a Caucasian employee was the perpetrator;

- that Plaintiff was forbidden from speaking conversational Spanish with another employee, despite having been certified by Defendant as a medical interpreter;

- that Plaintiff refused to help a newer employee with an assignment, but Plaintiff pleads that instead she asked another employee to help so that the front desk could not be left unattended; and

- that Plaintiff was purported to have worn ear buds at the front desk while on a personal call, but Plaintiff maintains she was not on a personal call and that several Caucasian employees also have worn ear buds at the front desk and not received discipline.

(*Id.*).

Plaintiff alleges she complained to Human Relations that Ms. Tomaino and Ms. Bullock were discriminating against her because of her race, ancestry, and ethnicity, and availed herself of Defendant's three step grievance process. (*Id.* at ¶¶ 21-22). On August 9, 2023, Plaintiff alleges that she requested to move to Step 2 of the grievance process. (*Id.* at ¶ 24). Plaintiff then was suspended on August 21, 2023, purportedly for using profanity, though Plaintiff alleges witnesses denied hearing profanity. (*Id.* at ¶ 25). Plaintiff then concedes that she spoke briefly with a co-worker on the phone when she was prohibited from doing so during her suspension, though Plaintiff also alleges the conversation was limited to telling the co-worker they were not permitted to speak. (*Id.* at ¶ 27). Plaintiff alleges she was terminated, purportedly for that reason, on August 23, 2023. (*Id.* at ¶ 26).

### III. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) permits this Court to dismiss a count of a

2

complaint if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks and citation omitted). The Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). But the Court cannot draw any *unreasonable* or unsupported inferences. *See, e.g.: Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 133 (3d Cir. 2006) ("[W]e need not credit the non-movant's conclusions of law or unreasonable factual inferences."); *Little v. Chambersburg Hosp.*, No. 1:11-CV-01804, 2012 WL 1048820, at *4 (M.D. Pa. Mar. 28, 2012) ("The deferential standard of review applicable to a motion to dismiss does not go so far as to require this Court to accept unsupported inferences drawn by the Plaintiff.").

A formulaic recitation of the elements of a claim will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks and citation omitted). Conclusory statements and unfounded speculation are insufficient to state a claim. *Parker v. Pennstar Bank, NBT*, 436 F. App'x 124, 127 (3d Cir. 2011).

To state a *prima facie* case for disparate treatment discrimination under § 1981, a Plaintiff must plead that "1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Qin v. Vertex, Inc.*, 100 F.4th 458, 473 (3d Cir. 2024).

To state a *prima facie* case for a hostile work environment claim under § 1981, a Plaintiff must plead that "(1) she suffered intentional discrimination on the basis of race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for employer liability, such as *respondeat superior*." *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999). "Simple teasing, offhand remarks and isolated incidents are not enough; rather, the conduct must be sufficiently extreme that it amounts to a change in the terms and conditions of employment." *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 653 (E.D. Pa. 2012). In that sense, § 1981 is not a "general civility code." *Id.*

To state a *prima facie* case for retaliation under § 1981, a Plaintiff must plead that "(1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017) (cleaned up). The Third Circuit has held that "[i]n a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation." *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (citing *CBOCS West, Inc. v. Humphries*, 128 S.Ct. 1951, 1958, (2008)).

**IV.   Analysis**

This Court examines the pleadings as a whole to see if whether, taken all together, they permit this Court to make a reasonable inference of intentional discrimination so as to support a § 1981 claim under any of her theories. This Court concludes that no such claim has been adequately pleaded, and Count I of the Complaint should be dismissed. Reaching this conclusion necessarily involved an examination into the minutia of each allegation of wrongdoing to determine whether it helps to create such an inference. But this Court wishes to make clear at the

4

outset that its decision today is not based on any one flaw in any specific allegation. Rather, today's decision is based upon weighing the Complaint as whole, after examining each allegation closely.

### A. "Race, Ancestry, and Ethnic Discrimination" and "Hostile Work Environment" Claims.

First, the Court will analyze Plaintiff's claims for Race, Ancestry, and Ethnic Discrimination and for a Hostile Work Environment. While the verbiage in the elements differ, at this stage, both claims effectively require the Plaintiff to plead facts from which the Court can make an inference that the alleged mistreatment was related to or the result of intentional discrimination on the basis of her protected class or classes.

#### 1. Allegations Regarding Speaking Spanish in the Workplace.

The Court first begins with Plaintiff's allegations that she received a written warning because Plaintiff purportedly was speaking in Spanish to another employee, which made other employees feel they were the subject of the conversations. These allegations come closest to directly implicating the classes protected by § 1981. But for the reasons described below, this Court cannot conclude that they state a claim upon which relief can be granted.

This Court acknowledges the seemingly-contrasting decisions cited by the parties with respect to whether claims based on language or accents in the workplace present cognizable claims under § 1981. But a contrast in legal authority does not provide a basis upon which this Court can delay resolving an issue of law properly before it.

Under § 1981, if the Complaint states a claim based on national origin rather than race or ancestry, the claim will not succeed. *See, e.g.*: *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ("If respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981."). In Plaintiff's Complaint and briefing

5

on the Motion, she cites numerous cases which purport to stand for the proposition that language and accent-based claims can be sustained under § 1981. Defendant cites various contrasting cases, including *Mudie v. Philadelphia College of Osteopathic Medicine* (577 F.Supp.3d 375 (E.D. Pa. 2021)) and *Kania v. Archdiocese of Philadelphia* (14 F.Supp.2d 730 (E.D. Pa. 1998)). This Court is persuaded by Judge Marston's well-reasoned opinion in *Mudie* and Judge Hutton's analysis of workplace language policies in *Kania*.

In *Mudie*, Judge Marston rightly recognized that a § 1981 claim cannot find its basis in national origin discrimination. *Mudie*, 577 F.Supp.3d at 383. The Court there considered pleadings which included comments about the Plaintiff's grasp of the English language and Trinidadian accent. *Id.* at 384. The Court concluded that "taking [the plaintiff's] allegations as true, [the plaintiff] has plead a claim for *national origin* discrimination, not race discrimination." *Id.* at 385 (emphasis in original). On that basis, the Court granted the defendant's motion to dismiss. This Court sees the alleged discipline to Plaintiff in this case the same way. A policy against speaking Spanish does not, by itself, discriminate on the basis of race or ethnicity.

The cases cited by Plaintiff are distinguishable. Several of the cases cited by Plaintiff turned on the court's analysis that a *specific* language or *specific* accent is so closely tied to a specific ethnic background that a policy against the language or accent is essentially a policy targeting the given ethnic background. That is not true of Spanish. Spanish is the native language of almost 500,000,000 people from various parts of the world, with greatly-differing races, ancestries, and ethnicities. A policy against speaking Spanish in the workplace would impact all these people of varying backgrounds, including people who grow up speaking Spanish for any number of reasons entirely unrelated to national origin or ethnic background.

Even if a no-Spanish policy or discipline for speaking Spanish could create an actionable § 1981 claim, this Court would still find that the specific Complaint in front of it fails to plead

facts from which the Court would be permitted to make an inference of intentional discrimination. In *Kania*, the Court concluded that where a workplace establishes an English-only policy, that rule is not actionable as discrimination based on national origin where the Plaintiff was bilingual and capable of complying with the policy. *Kania*, 14 F.Supp.2d at 736.[1] Here, Plaintiff is bilingual, and therefore similarly capable of complying with an English-only policy. Plaintiff's allegation that she was disciplined for speaking Spanish in front of co-workers who do not speak Spanish essentially alleges enforcement of a rational workplace policy, as the *Kania* Court explained. Eradication of gossip and exclusion in the workplace is obviously a valid employer interest. A workplace could similarly ban whispered conversations.[2]

Several of the other cases cited by Plaintiff which do not turn on that close relationship between language and accent and culture (*see: supra*) instead allow the claim to proceed because the alleged policy related to language or accent is one of a number of allegations which, together, create an inference of intentional discrimination. This Court does not doubt those cases were decided correctly or even that a more well-pleaded complaint in this case might create such an inference. But, as will be discussed *infra*, Plaintiff's other allegations which Plaintiff maintains support an inference of intentional discrimination do not create enough support for such an inference. That is especially true because Plaintiff's complaint explicitly pleaded that she is a

---

[1] The Court notes that *Kania* dealt with a national origin Title VII claim rather than a § 1981 race or ethnicity claim. This makes the analysis even more compelling, because the pleading and evidentiary standards are even more stringent under § 1981 than under Title VII and because the nexus between the Spanish language and national origin is more obvious than that between Spanish and race/ethnicity/ancestry.

[2] There is no claim in this case under Title VII. Perhaps this may be a closer call if there were, as Title VII permits actions for unintentional discrimination under a theory of disparate impact. But There can be no claim for disparate impact under § 1981. *Castleberry*, 863 F.3d at 267.

7

certified medical interpreter. That means that Defendant *wants* her to speak Spanish where appropriate. This is highly suggestive that Defendant has no intention to discriminate against Spanish speakers in general, but that the discipline allegedly taken against Plaintiff was based upon only the legitimate purpose found in *Kania*.

To sum it up, this Court does not believe a policy which prohibits speaking Spanish in the workplace generally violates § 1981 with respect to an employee who also speaks English. But even if such a claim was cognizable, this Court simply cannot make the unreasonable and unsupported inference that the alleged discipline which Plaintiff received for speaking Spanish with coworkers is evidence of intentional discrimination under § 1981.

### 2. Remaining Allegations of Mistreatment.

The Court will now address each of the remaining allegations which Plaintiff says supports her discrimination and hostile work environment claims. The first is that "Tomaino treated Plaintiff in a rude and condescending manner, made threats to terminate her employment, and selectively did not follow policy and protocol when making decisions regarding Plaintiff's employments a result of her race, ancestry and or ethnicity." (Dkt. #1 at ¶ 17). The first half of this paragraph contains allegations that Ms. Tomaino was uncivil, which are not actionable absent evidence of intent to discriminate. The remaining allegations of this paragraph that this uncivility was "a result of her race, ancestry and or ethnicity" is a conclusion of law with no supporting facts. While this is an appropriate portion of a Complaint for the purposes of setting the stage for what the Complaint intends to show, it cannot be an independent basis for a finding that Plaintiff has adequately stated a claim under § 1981.

The next such allegation is that "Tomaino also began to gossip with other Caucasian co-workers of Plaintiff about manufactured performance concerns . . . ." (*Id.* at ¶ 18). This is insufficient. A Plaintiff pursuing a race or national origin discrimination claim cannot merely state

8

some mistreatment and make allegations as to the race or national origin of the perpetrator. *Perez v. RHP Staffing Co.*, No. 5:21-CV-01314, 2021 WL 4583850, at *8 (E.D. Pa. Oct. 6, 2021). The question is whether the mistreatment is *because of* intentional discrimination. The Court simply cannot make a reasonable inference of intentional discrimination from the mere fact that the gossiping was among Caucasian co-workers.

Plaintiff alleges that was said to have been the subject of a patient complaint, but it turned out another, Caucasian, employee was the one about whom the complaint was made. Again, there is nothing in this allegation which can lead to any inference whatsoever that the mistake was based in intentional discrimination. Further, the fact that the mistake of identity was later cleared up and the guilty employee was a member of a different race, ancestry, and/or ethnic background suggests that this was a good faith response to a Complaint and that the original misidentification had its basis in something other than a protected class.

Plaintiff next alleges that she was disciplined for purportedly wearing ear buds and taking a personal phone call while registering a patient. Plaintiff concedes she was wearing ear buds but denies that she was on a personal call. Plaintiff says that other Caucasian employees have worn ear buds while registering patients and have not been disciplined for the same. Plaintiff attempts to use these comparator employees to support her § 1981 claim. But the comparison, as pleaded, is apples and oranges. Plaintiff alleges her discipline was for being on a personal call, whereas the proffered comparator employees were merely wearing ear buds.

When your job is registering patients at the front desk, there is a significant difference between being suspected of being actively engaged in a personal phone call with the possibility of medical information being overheard by the call's recipient and merely having ear buds in, where you may only be listening to music, and whose audio might well be paused. While a comparator employee does not need to be identically situated, they must be similar to the plaintiff in "all

9

relevant aspects." *Wilcher v. Postmaster Gen.*, 441 Fed. Appx. 879, 881–82 (3d Cir.2011); *see also*: *Tamburello v. City of Allentown*, No. 5:20-CV-06153-JMG, 2022 WL 377400, at *1 (E.D. Pa. Feb. 7, 2022); *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 525 (E.D. Pa. 2014). Here, the Court finds noteworthy differences on the face of the Complaint such that the purported comparator employees cannot raise a reasonable inference of intentional discrimination.

Plaintiff alleges that she was suspended for using profanity against another employee, despite at least two witnesses denying hearing her use profanity. She goes on to allege that she was later fired for speaking with a coworker on the phone during her suspension (the Complaint acknowledges she did speak on the phone with the co-worker), but that such call was quite brief and limited to her explaining that they should not speak on the phone. These allegations are entirely devoid of any references to Plaintiff's race, ethnicity, or ancestry, or any facts which indirectly implicate those protected classes.

Plaintiff asks this Court to accept as true that she did not use profanity and that her phone call with the coworker was as brief as she stated. This Court accepts all of Plaintiff's well-pleaded factual allegations and makes all reasonable inferences it can justify in her favor. But Plaintiff has a second ask, and one this Court cannot sustain. Plaintiff asks this Court to infer that Defendant intentionally discriminated against her on the basis of her race, ethnicity, or ancestry from the fact that she allegedly did *not* use the profanity and that she allegedly kept the violative phone communication exceedingly brief. But because this Court is not at all convinced that the aforementioned allegations raise a general specter of a racially-discriminatory atmosphere, this Court has no basis whatsoever in the Complaint to make such an inference.

At oral argument, counsel for Plaintiff made much of the fact that Plaintiff is the only Puerto Rican and/or Hispanic/Latina employee on the night shift in the Registration Department. This fact does not get Plaintiff nearly as far as she might hope. As counsel for Defense pointed

out, were the Court to give heavy weight to that fact, such weight could turn virtually any adverse employment action into an actionable § 1981 claim. That simply cannot be correct. Plaintiff still bears the burden to plead facts that raise an inference of intentional discrimination. Pleading that Plaintiff faced an adverse employment action as the only member of her protected class working on the night shift at that time, is simply not enough. Because this Court cannot infer intentional racial discrimination from any of the facts alleged by Plaintiff, it must dismiss Plaintiff's claims under § 1981 for "Race, Ancestry, and Ethnic Discrimination" and "Hostile Work Environment."

### B. Retaliation Claim

As explained, *supra*, Plaintiff's underlying § 1981 claims are deficient. Under well-settled Third Circuit precedent, that means that Plaintiff's retaliation claim must also be dismissed. "In a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation." *Oliva*, 604 F.3d at 798. *See also*: *Washington v. Se. Pennsylvania Transportation Auth.*, No. CV 19-4213, 2021 WL 2649146, at *36 (E.D. Pa. June 28, 2021) (Slomsky, J.); *Moss v. Nat'l R.R. Passengers Corp.*, No. CV 18-1262, 2019 WL 4697603, at *20 (E.D. Pa. Sept. 26, 2019) (Kelly, J.); *Hughes v. Novo Nordisk, Inc.*, No. CV 20-4991 (RK) (DEA), 2024 WL 2131676, at *22 (D.N.J. May 13, 2024). The Third Circuit is the only Circuit to have found such a requirement. But unfortunately for Plaintiff, it is also the only Circuit whose precedential decisions bind this Court. *Ellis v. Budget Maint., Inc.*, 25 F. Supp. 3d 749, 757 (E.D. Pa. 2014) (Baylson, J.) (noting that "the Third Circuit is alone in its judgment to require evidence of an underlying violation," but dismissing the § 1981 retaliation claim pursuant to *Olivia*). Because the underlying § 1981 claims are dismissed, so too is the retaliation claim.[3]

---

[3] This is yet another respect in which a Title VII claim may have come out differently than the § 1981 claim before the Court today. *See Claybourne v. HM Ins. Grp.*, No. 2: 14CV1412, 2015 WL 7444644, at *1 (W.D. Pa. Nov. 23, 2015) (noting that *Olivia's* rule regarding § 1981 retaliation

### C. Leave to Amend

While this Court ultimately concludes that that Plaintiff failed to state a claim upon which relief can be granted under § 1981, the above analysis is intended to reflect that this was a careful decision based upon balancing any number of allegations which came close to stating a claim, but ultimately came up just short. At oral argument, counsel for Plaintiff made additional arguments and brought up additional facts which were not on the face of the Complaint, but which might give rise to an actionable § 1981 claim. For that reason, and in light of the Third Circuit's liberal policy towards amendment, this Court will grant leave to amend.

### V. Conclusion

In a certain respect, drafting a complaint which sufficiently alleges intentional discrimination can be approached in one of a two ways. The first is where a discrimination complaint has one absolutely undeniable example of obvious discrimination and then a series of disciplinary actions which might seem a bit like overkill or which are alleged to have been mistaken. Once you have that one obviously discriminatory action, the rest of those grievances which are not directly related to discrimination might well be tainted (at least at the motion to dismiss phase) with the stain of that obvious discrimination. The second is where a Complaint which has a series of grievances which are not obviously related to the protected class, but each of which marginally increases the inference of discrimination until there is enough to survive. While no one allegation might be enough to withstand a motion to dismiss, together the allegations as a whole plead circumstances which permit the Court to infer an atmosphere of discrimination sufficient to proceed past a 12(b)(6) motion.

---

claims "departs from the approach taken with respect to Title VII retaliation claims and retaliation claims under similar statutory schemes.")

This Court has carefully reviewed the factual allegations of the Complaint, taken them as true, and granted every reasonable inference in Plaintiff's favor. Even in so doing, this Court cannot find that the Complaint, as drafted, fits into either category of permissible complaint outlined above. The Complaint lacks either that silver bullet of obvious discrimination or the incremental building of implicit discrimination which would permit this court to make a reasonable inference of *intentional* discrimination on the basis of race, ethnicity, or ancestry.

Therefore, this Court must dismiss Plaintiff's claims under § 1981 for "Race, Ancestry, and Ethnic Discrimination" and "Hostile Work Environment" without prejudice. Plaintiff will be given leave to amend the Complaint. Because this case remains active with or without the § 1981 claims (due to Plaintiff's Count II alleging violations of the FMLA), this Court will set a schedule to ensure that Defendant is not forced to answer Count II only to be faced with an amended complaint.

An appropriate Order will follow.

BY THE COURT:

GAIL A. WEILHEIMER    J.

Date: March 21, 2025